UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GAYLE BOUCHARD
             Plaintiff,

    v.                                                        Civil Action No.

QUAD/GRAPHICS, INC.

             Defendant.

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

I bring this equal pay and sex discrimination action against my employer, the Defendant Quad/Graphics, Inc. for failing and refusing to pay me equally to my male coworker. I discovered that my male coworker, who was hired in April, 2011, was making nearly 20% more than me, even though I was told the company was seeking an "equal" to my position. I trained the new male hire to perform the same job functions I performed the previous 6 years. According to management, we were both to hold the same job title of "Purchasing Coordinator."

### PARTIES

1. I am an individual with a mailing address of 14 N. Main Street, West Boylston, Massachusetts, 01583.

2. I am a member of a protected group under the Federal Equal Pay Act, 29 U.S.C. §§ 206(d), 216; the Massachusetts Equal Pay Act, G.L. ch. 149, §105A; Title VII of the federal Civil Rights Act, 42 U.S.C. §2000(e) et. seq.; and G.L. ch. 151B, the state anti-discrimination law, on the basis of my sex (female).

3. Quad/Graphics, Inc. ("Quad") is a printing company with its principal place of business at N61W23044 Harry's Way, Sussex, WI, 53089-3995. Quad operates out of several locations in Massachusetts, including a location at 27 Nashua Street, Leominster, MA 01453. The violations which give rise to this Complaint occurred in Leominster.

4. Quad is an employer as defined by the Federal Equal Pay Act, 29 U.S.C. §§206(d), 216; the Massachusetts Equal Pay Act, G.L. ch. 149, §105A; Title VII of the federal Civil Rights Act, 42 U.S.C. §2000(e) et. seq.; and G.L. ch. 151B, the state anti-discrimination law,

## FACTS

5. I started work at Quad on February 1, 2005. I was hired to work as a Purchasing Coordinator. Attached as Exhibit 1 is a copy of my job description dated December 3, 2004. My experience prior to working at Quad included over 7 years with Semline/Quebecor/Worldcolor/Quebecorworld Inc. (previous owners of Quad Graphics/Leominster). Upon leaving "Quebecorworld" I worked nearly 4 years as a print buyer for Progress Software (earning $49,000 +).

6. I worked closely with my manager, Paul McDermott, over the next six years and gained a great deal of knowledge about printing paper and printing in general. I was solely responsible for filling in for him during his vacations over the years and during the 15-20 week period he was out on medical leave/vacation in 2008/2009. I received positive reviews and acknowledgment from both Mr. McDermott and the Production Services Manager, William Quirk, that I had performed extremely well during Mr. McDermott's absence. Attached as Exhibit

2 is a copy of a performance evaluation from that time.  I also single handedly managed the department from the time Mr. McDermott left until Mr. Moore began work in early April.

7.  When Mr. McDermott resigned in early January 2011, he had the title of "Purchasing/Estimating Manager."  Quad posted an opening for that title. Attached as Exhibit 3 is a copy of the job description for Purchasing/Estimating Manager dated January 21, 2011.  I applied for the position and interviewed with Quad/Leominster HR Generalist Rosemary Lynch, and Mr. Quirk.  Ms. Lynch stated that I "interviewed well."

8.  Shortly thereafter I was told the company would not be replacing the managerial position Mr. McDermott held, I met with Ms. Lynch and stated that I was willing and eager to be considered the  "lead" in the department (since I already functioned in this role,) and be fairly compensated for it.  I also suggested that another female employee in the estimating department who functions as the "lead" in her area be involved with greater compensation.

9.  On or around February 25, 2011, Mr. Quirk told me (with Ms. Lynch present) that the company was not going to make me a "lead," and instead decided that they going to look for an "equal" to my position and that we would work in the same office and perform the same job (i.e., creating purchase orders, working with vendors, internal customers, communications, etc.).  At this time, Quad removed the Purchasing/Estimating Manager position posting and instead posted the Purchasing Coordinator position. Attached as Exhibit 4 is a copy of the job description for Purchasing Coordinator dated February 22, 2011.  It is virtually

identical to the job description from December 3, 2004.

10. No one has ever told me that my job duties and responsibilities would change (which they have not) or that the new purchasing coordinator would have any different focus or duties and responsibilities than I do or exercise any more personal judgment relative to paper buying decisions. Quad hired Stephan Moore, a male, in April, 2011 for the open Purchasing Coordinator position. Mr. Moore had been unemployed for approximately a year immediately prior to his hire.

12. In September, 2011, Mr. Moore faxed his pay stub to his wife on a Friday. He neglected to remember that the transmittal form produced by our fax machine showed the status of the communication and about two-thirds of its content. I gave Mr. Moore ample time Monday morning to take the document from the tray, but he did not. I looked at it, discovered what it was, and saw the amount that he was being paid. His salary is $50,000, which is approximately 20% more than my salary which is $40,400.

13. Mr. Moore and I share the same job title and perform equal work. We both update job tickets, scheduling systems, allocate/issue paper, create purchase orders for paper and non paper related items, keep track of paper and related inventories, etc. I can (and do) perform all the duties he does on a daily basis (which I trained him to do). Mr. Moore does not have greater accountability than I do. To this day, I have been ordering the bulk of the "stock" cover paper. The purchases of these vital papers that I have made since May 2011, well exceed $2,000,000. This excludes other outside work.

14. I filed my claims with the United States Equal Employment Opportunity Commission

and the Massachusetts Commission Against Discrimination before filing this
Complaint.

## COUNT I- VIOLATION OF EQUAL PAY ACT (EPA)

14. I incorporate by reference herein the allegations contained in paragraphs 1 through 13.

16. As an employer within the meaning of the EPA, Quad owed a duty to me not to
discriminate against me with respect to the payment of wages on the basis of my
sex.

17. I am female and otherwise a member of a protected class, entitled to the protections
afforded by the EPA.

18. My sex was a factor that made a difference in Quad's decision to subject me to the
wrongful and discriminatory treatment described above.

19. Quad, by its agents, representatives, and employees, was predisposed to discriminate
on the basis of sex and acted in accordance with that predisposition.

20. Quad, by and through its agents, representatives and employees, intentionally
discriminated against me on account of my sex in violation of the EPA in the
following respects, among others: denying me wages that reflect my current levels
of responsibility and job assignments and denying me equal pay.

21. Quad illegally discriminated against me by treating me in a disparate manner from my
male colleague with respect to the terms and conditions of employment,
specifically pay.

22. Quad had no legitimate business reason for any of the above-referenced acts, in
violation of the EPA, which specifically prohibits discrimination against any
person regarding payment of wages on the basis of sex.

23. As a direct and proximate result of Quad's discriminatory acts, I have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and other damages outlined above.

## COUNT II- VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (TITLE VII) BASED ON SEX

23. I incorporate by reference herein the allegations contained in paragraphs 1 through 22.

25. As an employer within the meaning of the Title VII, Quad owed me a duty not to discriminate against me with respect to employment, compensation, or other conditions or privileges of employment on the basis of my sex.

26. I am female and otherwise a member of a protected class, entitled to the protections afforded by Title VII.

27. My sex was a factor that made a difference in Quad's decision to subject me to the wrongful and discriminatory treatment described above.

28. Quad, by its agents, representatives, and employees, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

29. Quad by and through its agents, representatives and employees, intentionally discriminated against me on account of my sex in violation of Title VII in the following respects, among others: denying me wages that reflect my current levels of responsibility and job assignments and denying me equal pay.

30. Quad illegally discriminated against me by treating me in a disparate manner from my male colleagues with respect to the terms and conditions of employment.

31. Quad had no legitimate business reason for any of the above-referenced acts, in violation of Title VII, which specifically prohibits discrimination against any

person regarding employment and/or the terms of employment on the basis of sex.

32. As a direct and proximate result of Quad's discriminatory acts, I have sustained loss
of earnings, earning capacity, and fringe benefits and have suffered mental
anguish, physical and emotional distress, humiliation and embarrassment, and loss
of professional reputation and other damages outlined above.

## COUNT III- VIOLATION OF MASSACHUSETTS EQUAL PAY ACT (MEPA)

32. I incorporate by reference herein the allegations contained in paragraphs 1 through 31.

34. As an employer within the meaning of the MEPA, Quad owed a duty to me not to
discriminate against me with respect to the payment of wages on the basis of my
sex.

35. I am female and otherwise a member of a protected class, entitled to the protections
afforded by the MEPA.

36. My sex was a factor that made a difference in Quad's decision to subject me to the
wrongful and discriminatory treatment described above.

37. Quad, by its agents, representatives, and employees, was predisposed to discriminate
on the basis of sex and acted in accordance with that predisposition.

38. Quad, by and through its agents, representatives and employees, intentionally
discriminated against me on account of my sex in violation of the MEPA in the
following respects, among others: denying me wages that reflect my current levels
of responsibility and job assignments and denying me equal pay.

39. Quad illegally discriminated against me by treating me in a disparate manner from my
male colleague with respect to the terms and conditions of employment,
specifically pay.

40. Quad had no legitimate business reason for any of the above-referenced acts, in violation of MEPA, which specifically prohibits discrimination against any person regarding payment of wages on the basis of sex.

41. As a direct and proximate result of Quad's discriminatory acts, I have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and other damages outlined above.

## COUNT IV- VIOLATION OF G.L. ch. 151B

41. I incorporate by reference herein the allegations contained in paragraphs 1 through 40.

43. As an employer within the meaning G.L. ch. 151B, Quad owed me a duty not to discriminate against me with respect to employment, compensation, or other conditions or privileges of employment on the basis of my sex.

44. I am female and otherwise a member of a protected class, entitled to the protections afforded by G.L. ch. 151B.

45. My sex was a factor that made a difference in Quad's decision to subject me to the wrongful and discriminatory treatment described above.

46. Quad, by its agents, representatives, and employees, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

47. Quad by and through its agents, representatives and employees, intentionally discriminated against me on account of my sex in violation of G.L. ch. 151B in the following respects, among others: denying me wages that reflect my current levels of responsibility and job assignments and denying me equal pay.

48. Quad illegally discriminated against me by treating me in a disparate manner from my

male colleagues with respect to the terms and conditions of employment.

49. Quad had no legitimate business reason for any of the above-referenced acts, in
violation of G.L. ch. 151B, which specifically prohibits discrimination against any
person regarding employment and/or the terms of employment on the basis of sex.

50. As a direct and proximate result of Quad's discriminatory acts, I have sustained loss
of earnings, earning capacity, and fringe benefits and have suffered mental
anguish, physical and emotional distress, humiliation and embarrassment, and loss
of professional reputation and other damages outlined above.

**WHEREFORE**, I pray that this Honorable Court grant the following remedies:

1. Declare that the acts and practices outlined above are in violation of the above-referenced laws;

2. Enjoin and permanently restrain these practices;

3. Direct Quad to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

4. Award liquidated damages to me;

5. Award punitive damages to me;

6. Award all lost wages, past and future, to which I am entitled to me;

7. Award compensatory damages to me;

8. Award reasonable attorney fees and costs to me; and

9.      Grant such other relief as this Court deems appropriate.

## JURY DEMAND

I demand a jury trial on all my claims.

Gayle Bouchard
14 N. Main Street
West Boylston, MA 01583

Dated: February 16, 2012